# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | | |
|---|---|---|
| **MURRAY G. LAWRENCE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION 09-0050-WS-C** |
| | ) | |
| **THE CITY OF FAIRHOPE, ALABAMA,** | ) | |
| **et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## ORDER

This matter is before the Court on the defendants' motion for summary judgment. (Doc. 34). The parties have filed briefs and evidentiary materials in support of their respective positions, (Docs. 35-37, 41-45, 51), and the motion is ripe for resolution. After carefully considering the foregoing and other relevant material in the file, the Court concludes that the motion is due to be granted in part and denied in part.

## BACKGROUND

On the night of January 26, 2007, the plaintiff and three male associates were walking down a public sidewalk near the plaintiff's house. As they walked, a patrol car driven by defendant Wendell Thomas, a police officer employed by the defendant City of Fairhope ("the City"), drove by. The plaintiff, mistakenly believing a friend of his was driving the vehicle, called out to it. Thomas turned the vehicle around, returned to the group, and verbally directed one of the men to approach. What happened next is the subject of some dispute, but within a few minutes Thomas had arrested the plaintiff for disorderly conduct and taken him to the jail in handcuffs. A few days later, Thomas filed a criminal complaint against the plaintiff. He was convicted in municipal court but acquitted by a jury on appeal to circuit court. This lawsuit followed.

The complaint is not a model of clarity.  It invokes jurisdiction under 28 U.S.C. §§ 1331 and 1343(3) and announces that suit is brought to redress deprivations of the plaintiff's rights under the Fourth and Fourteenth Amendments, but it also purports to assert claims "arising under the laws and statutes of the State of Alabama."  (Doc. 1 at 1-2).  Count One is identified as a claim for "negligent training and supervision"; Count Two, "false imprisonment"; Count Three, "false arrest"; Count Four, "assault and battery"; and Count Five, "malicious prosecution."  (*Id.* at 4-7).  The complaint contains no specific identification as to whether any given count is brought as a state claim, a constitutional claim, or both.  The plaintiff's indefinite pleading, and the defendants' failure to seek its clarification through re-pleading or discovery, has unnecessarily complicated the Court's work.

## DETERMINATIONS OF UNCONTROVERTED FACT

The encounter began when the plaintiff, thinking the patrol car was being driven by a friend of his, screamed "Hey, Benji" very loudly.  (Plaintiff Deposition at 31).  When Thomas ordered the plaintiff to "bring your ass here," the plaintiff responded by shouting back from a distance of 20 to 30 feet.  (Edelman Deposition at 14; Thomas Deposition at 47).  During the encounter, people came out of a nearby pool hall to see what was happening.  (*Id.* at 65).

The only touching to which the plaintiff objects is Thomas' handcuffing of him.  (Plaintiff Deposition at 84).  His only objection is that the handcuffs "were too tight."  (*Id.*).  This condition "wasn't that bad, just uncomfortable."  (*Id.* at 49).  The condition lasted less than ten minutes before the plaintiff complained, and the cuffs were immediately loosened.  (*Id.*; Thomas Deposition at 55, 63-64).  The only injury caused by the tight handcuffs was bruising to the plaintiff's wrists, for which he did not seek medical treatment.  (Plaintiff's Deposition at 49).

# DISCUSSION

Summary judgment should be granted only if "there is no issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party seeking summary judgment bears "the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir. 1991).

"If the party moving for summary judgment fails to discharge the initial burden, then the motion must be denied and the court need not consider what, if any, showing the non-movant has made. [citation omitted] If, however, the movant carries the initial summary judgment burden ..., the responsibility then devolves upon the non-movant to show the existence of a genuine issue of material fact." *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1116 (11th Cir. 1993). "If the nonmoving party fails to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof, the moving party is entitled to summary judgment." *Clark*, 929 F.2d at 608 (internal quotes omitted).

In deciding the defendants' motion for summary judgment, the Court is required to view the evidence and the reasonable inferences therefrom in the light most favorable to the plaintiff. *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003). For purposes of the pending motion, the Court must therefore accept the following version of events.

The plaintiff and three of his son's friends watched a tennis match on television at the plaintiff's home. (Plaintiff Deposition at 23). The plaintiff is African-American and lives in a predominantly African-American neighborhood; his son's friends are white. (Edelman Deposition at 13-14; Fuschen Deposition at 16-17). After the match, around 10:30 p.m., they went for a walk in the neighborhood. (Plaintiff Deposition at 25, 29-30; Edelman Deposition at 9). A block or so from the plaintiff's home, a patrol car passed

and the plaintiff, believing it was being driven by a friend of his, loudly screamed, "Hey, Benji." (Plaintiff Deposition at 31-32). The vehicle actually was being driven by Thomas, who is white. In the passenger seat was Officer Tim Lennox, also white.

After passing the group, Thomas turned the vehicle around and returned to the group, which was standing still and quiet. (Edelman Deposition at 10; Doc. 45, Exhibit 10 at R-65). From a distance of 10 to 15 feet, Thomas screamed at Robert Fuschen, one of the three white males, to approach the police car. (Plaintiff Deposition at 34; Edelman Deposition at 10; Doc. 45, Exhibit 10 at R-65). Fuschen complied, walking up to the driver side window. Thomas asked Fuschen what the hell he was doing in this part of town, which Fuschen understood as a reference to its racial composition. At this point, Thomas saw the plaintiff leave the group and begin to cross the street towards the patrol car, and he asked Fuschen what he was doing "with him," meaning the plaintiff. Fuschen responded that the plaintiff was family, and Thomas asked how the plaintiff was family and what Fuschen meant by family. Fuschen responded, "There's only one way that word is meant." (Fuschen Deposition at 18-20; Thomas Deposition at 43).

While this conversation went on, the plaintiff left the other two males and approached the front of the patrol car, trying to determine if Benji was in fact driving. He came about halfway to the vehicle, where he saw through the tinted windshield that Benji was not inside. He kept walking past the patrol car, never stopping. As he walked past the front of the vehicle, Thomas screamed something like, "Murray, don't bring your ass to this car." The plaintiff, continuing to walk away from the vehicle, responded, "I'll walk where the hell I want to walk. It's a free country." (Plaintiff Deposition at 34-35, 41-42; Edelman Deposition at 14).

About the time Fuschen finished saying, "There's only one way that word is meant," and about the time the plaintiff finished saying, "It's a free country," an obviously furious Thomas suddenly flung open the driver door and screamed, "Murray, bring your ass here." (Plaintiff Deposition at 35; Fuschen Deposition at 17-18; Edelman

Deposition at 12).  By this time, the plaintiff was 20 or 30 feet away, back on the opposite sidewalk with the other two males.  (Fuschen Deposition at 18; Thomas Deposition at 47).  The plaintiff shouted back, "You want me, bring your ass over here."  Thomas said, "You're resisting arrest."  The plaintiff said, "Resisting arrest?"  Lennox exited the vehicle and said, "Come on, Murray.  Come on and walk down."  (Plaintiff Deposition at 35, 43; Edelman Deposition at 14; Thomas Deposition at 47).  The plaintiff approached the vehicle, and Thomas approached him, grabbed him, and arrested him for disorderly conduct.  (*Id*. at 52, 78).  From the time the plaintiff yelled, "Hey, Benji" until he was driven off in handcuffs was under three minutes.  (Doc. 45, Exhibit 10 at R-59).

The plaintiff used no profanity during the encounter and, after calling, "Hey, Benji," he did not again raise his voice until Thomas began screaming at him.  (Plaintiff Deposition at 43; Edelman Deposition at 14).  The plaintiff had not consumed alcohol, nor did he appear to Thomas to be under the influence.  (Edelman Deposition at 22; Doc. 45, Exhibit 10 at R-60).

The defendants base their motion for summary judgment largely on Thomas' version of the encounter.  According to Thomas, the plaintiff came to the passenger window, then crossed to the driver side about six feet from Fuschen, all the while yelling and talking so loudly that Thomas could not carry on a conversation with Fuschen, who was barely one foot away from Thomas.  According to Thomas, he three times instructed the plaintiff to leave the vehicle, but the plaintiff remained until after the third instruction.  According to Thomas, when he ordered the plaintiff to return to the vehicle, the plaintiff yelled back, "Shut your damn mouth."  According to Thomas, people spilled out of a nearby pool hall during the encounter to see what was happening.

The problem for the defendants is that Thomas' version is contradicted by evidence from other witnesses, and on motion for summary judgment the Court must accept their testimony rather than that of Thomas.  Only the fact that the plaintiff yelled at Thomas when he ordered him to return to the vehicle, and that pool hall patrons came

outside during the encounter, is uncontroverted by other evidence.

## I. Constitutional Claims.

### A. False Arrest.

The defendants concede that Count Three includes a constitutional claim. (Doc. 35 at 10). "A warrantless arrest without probable cause violates the Constitution and provides a basis for a section 1983 claim." *Case v. Eslinger*, 555 F.3d 1317, 1326 (11th Cir. 2009) (internal quotes omitted). However, "[t]he existence of probable cause at the time of arrest ... constitutes an absolute bar to a section 1983 action for false arrest." *Id.* (internal quotes omitted). The defendants argue that Thomas had probable cause to arrest the plaintiff for disorderly conduct. In the alternative, they assert that he had at least arguable probable cause, which is sufficient to cloak him with qualified immunity. *Id.* at 1327 ("Absent probable cause, an officer is still entitled to qualified immunity if arguable probable cause existed.").

In evaluating this assertion of qualified immunity, the burden is first on Thomas to show that he was acting within his discretionary authority. *E.g., Corey Airport Services, Inc. v. Decosta*, 587 F.3d 1280, 1285 (11th Cir. 2009). "Because making an arrest is within the official responsibilities of a sheriff's deputy, [the defendant] was performing a discretionary function when he arrested [the plaintiff]." *Crosby v. Monroe County*, 394 F.3d 1328, 1332 (11th Cir. 2004); *accord Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002). By statute, a municipal police officer is empowered to make arrests, Ala. Code § 15-10-1, including arrests without a warrant for offenses committed in his presence. *Id.* § 15-10-3(a)(1). Plaintiffs routinely concede that arresting a suspect falls within the discretionary authority of a city police officer,[1] and the plaintiff does not

---

[1] *E.g., Sanchez v. Hialeah Police Department*, 2009 WL 4829872 at *2 (11th Cir. 2009); *Angeline v. City of Hoover*, 352 Fed. Appx. 332, 334 (11th Cir. 2009); *O'Donnell v. Derrig*, 346 Fed. Appx. 385, 388 (11th Cir. 2009).

challenge the defendants' assertion that Thomas acted within his discretionary authority in arresting him. (Doc. 35 at 7-8). Thomas has thus met his initial burden.

"Probable cause to arrest exists when law enforcement officials have facts and circumstances within their knowledge sufficient to warrant a reasonable belief that the suspect had committed or was committing a crime." *Skop v. City of Atlanta*, 485 F.3d 1130, 1137 (11th Cir. 2007) (internal quotes omitted). Arguable probable cause exists when "reasonable officers in the same circumstances and possessing the same knowledge as the Defendant[] *could have believed* that probable cause existed to arrest." *Id*. (emphasis in original, internal quotes omitted).

"Whether an arresting officer possesses probable cause or arguable probable cause naturally depends on the elements of the alleged crime, [citation omitted], and the operative fact pattern." *Skop*, 485 F.3d at 1137-38. The plaintiff was arrested for disorderly conduct. Alabama law defines that offense as follows:

> A person commits the crime of disorderly conduct if, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he:
> (1) Engages in fighting or in violent tumultuous or threatening behavior; or
> (2) Makes unreasonable noise; or
> (3) In a public place uses abusive or obscene language or makes an obscene gesture; or
> (4) Without lawful authority, disturbs any lawful assembly or meeting of persons; or
> (5) Obstructs vehicular or pedestrian traffic, or a transportation facility; or
> (6) Congregates with other person [sic] in a public place and refuses to comply with a lawful order of the police to disperse.

Ala. Code § 13A-11-7(a).

Thomas has had some difficulty deciding which of these situations prompted his arrest of the plaintiff. In his contemporaneous report, he recorded that the plaintiff "began acting suspicious," that he "talk[ed] loudly," and that he "began yelling and cursing," allegations which, generously construed, might implicate subsections (2) and (3). (Doc. 45, Exhibit 4). Three days later, Thomas' criminal complaint omitted all

reference to this conduct and instead charged the plaintiff with congregating with other persons and refusing to comply with a lawful order to disperse, thus implicating only subsection (6). (Doc. 36, Exhibit 5 at 5). In his deposition, Thomas identified subsections (2), (3) and (6), and also for the first time introduced subsection (5) as a basis for his arrest of the plaintiff. (Thomas Deposition at 48). Later in his deposition, Thomas again invoked subsections (2), (3) and (5) but for the first time injected subsection (1). (*Id*. at 65).

The plaintiff, focusing on the criminal complaint, concludes that his arrest was based solely on subsection (6), and he argues that neither probable cause nor arguable probable cause existed to arrest him for congregating with other persons in a public place and refusing to comply with a lawful order of the police to disperse. (Doc. 42 at 5-6). The Court agrees that there is sufficient evidence to create a genuine issue of material fact as to whether probable cause or arguable probable cause existed to arrest the plaintiff under subsection (6).

Thomas acknowledges that to congregate means "to group up," and he says the "other people" with whom the plaintiff was congregating were his three associates. (Thomas Deposition at 80). But there is record evidence that the plaintiff had separated from both Fuschen and the other two individuals before Thomas first spoke to him, and there is evidence that the plaintiff never re-congregated with Fuschen. (*Id*. at 35, 37; Plaintiff Deposition at 34-35, 40-41; Edelman Deposition at 12). There is evidence that Thomas ordered the plaintiff not to bring his ass to the car only one time, and that he did so when the plaintiff was by himself. (Plaintiff Deposition at 41). While there is evidence that the plaintiff rejoined the other two individuals before he was arrested, there is also evidence that the only thing Thomas said to the plaintiff after he did so was to get his ass back to the police car. (Fuschen Deposition at 18). Under this view of the evidence, it is plain that the plaintiff was not congregating with anyone when Thomas told him not to bring his ass to the car. Because the statute expressly requires that a

person be congregating when he refuses a lawful order to disperse, under that version of the facts no reasonable police officer in such circumstances could have believed he had probable cause to arrest under subsection (6).[2]

The plaintiff appears to believe this is the end of the matter, but it is not. The Court must consider "the elements of the alleged crime," *Skop*, 485 F.3d at 1137, and the crime for which the plaintiff was arrested is disorderly conduct; the various subsections of Section 13A-11-7 do not represent separate crimes but different ways of committing the single crime of disorderly conduct. The question is thus whether there is evidence sufficient to support a finding that no probable cause or arguable probable cause existed to arrest the plaintiff under any of the subsections the defendants have invoked. *Cf. Skop*, 485 F.3d at 1138 (if the defendant had probable cause or arguable probable cause with respect to either of the crimes alleged, he would be entitled to qualified immunity); *Miller v. Harget*, 458 F.3d 1251, 1260 (11th Cir. 2006) ("It is well-settled that an officer's subjective motivations do not affect whether probable cause existed.").

With respect to subsection (1), Thomas asserts only that the plaintiff was "tumultuous." (Thomas Deposition at 65). The word, as used in the statute, "suggest[s] *great* physical or emotional disorder." *Mitchell v. State*, 887 So. 2d 1017, 1020 (Ala. Crim. App. 2004) (Cobb, J., dissenting) (emphasis in original). Its very placement, between "fighting," "violent" and "threatening," makes plain that only highly elevated, potentially dangerous conduct is even possibly within its reach. The defendants identify no conduct they believe even arguably attains this high threshold, and the evidence of the encounter most favorable to the plaintiff suggests nothing that could possibly be characterized as tumultuous. *See Duncan v. State*, 686 So. 2d 1279, 1281 (Ala. Crim. App. 1996) (disobeying an officer's order to produce a driver's license, and saying "fuck

_____

[2]There is also some question whether an order to a citizen not to bring his ass to the police vehicle is an order to "disperse" within the statute, and there may be questions concerning whether any such order would be lawful. Resolution of the defendants' motion does not require consideration of these issues.

you" to him, did not amount to tumultuous behavior).  The plaintiff's version of events is so far removed from the reach of subsection (1) that no reasonable police officer in such circumstances could have believed he had probable cause to arrest for tumultuous behavior.

Thomas concedes that his invocation of subsection (3) is based exclusively on the plaintiff's statement, "Shut your damn mouth."  (Thomas Deposition at 61).  As a threshold matter, the plaintiff denies using any profanity, which creates a genuine issue of material fact as to whether he even made the statement on which the defendants rely.  That alone is enough to preclude a determination on motion for summary judgment that Thomas had probable cause or arguable probable cause to arrest the plaintiff under subsection (3).

Even were it established that the plaintiff made this statement, obscene language within Section 13A-11-7 is restricted to "fighting words," which include only "personally abusive epithets which, when addressed to the ordinary citizen are, as a matter of common knowledge, likely to provoke violent reaction."  *H.N.P. v. State*, 854 So. 2d 630, 632 (Ala. Crim. App. 2003) (internal quotes omitted).  "The fact that [a police] officer encounters ... vulgarities with some frequency, and the fact that his training enables him to diffuse a potentially volatile situation without physical retaliation, ... means that words which might provoke a violent response from the average person do not, when addressed to a police officer, amount to fighting words."  *Id*. (internal quotes omitted).  Since, under this standard, saying "fuck you" to a police officer will not support a prosecution for disorderly conduct under subsection (3),[3] saying "shut your damn mouth" cannot do so, and no reasonable police officer in the circumstances could have believed he had probable cause to arrest the plaintiff under subsection (3).

With respect to subsection (5), the patrol car was parked on the street, facing south.  The only vehicle allegedly obstructed was a northbound minivan.  (Thomas

_____

[3]*R.I.T. v. State*, 675 So. 2d 97, 100 (Ala. Crim. App. 1995).

Deposition at 78). There is evidence that the minivan could not proceed because the plaintiff was walking in the middle of the road, (*id.*; Doc. 45, Exhibit 10 at R-69), but there is also evidence that the plaintiff was not in the road but on the opposite sidewalk. (Fuschen Deposition at 18, 20). Under that version of the facts, no reasonable police officer in the circumstances could have believed he had probable cause to arrest the plaintiff under subsection (5).

That leaves for consideration subsection (2). The crime of disorderly conduct can be based on noise only if the noise is "unreasonable under the circumstances." *Swann v. City of Huntsville*, 455 So. 2d 944, 950 (Ala. Crim. App. 1984). Under the plaintiff's evidence, he could not have been making noise unreasonable under the circumstances during the bulk of the encounter, because he did not raise his voice and because Thomas repeatedly yelled at Fuschen and the plaintiff during this period. The defendants have not offered to show that a person not raising his voice while a police officer repeatedly yells at him and others could even possibly be making noise unreasonable under the circumstances. Under this version of the facts, no reasonable police officer could have believed he had probable cause to arrest the plaintiff for making unreasonable noise during the bulk of the encounter.

However, by the plaintiff's own admission, he initiated the encounter when he "screamed 'Hey, Benji,' very loud." Moreover, it is uncontroverted that the plaintiff shouted, from a distance of 20-30 feet, and the blandest version of his statement is, "You want me, bring your ass over here." Finally, it is uncontroverted that, during the encounter, people came out of a nearby pool hall to see what was happening. In *Borden v. State*, 523 So. 2d 508 (Ala. Crim. App. 1987), the Court ruled that the defendant's "conduct in shouting obscenities at Deputy Martin, while outside, with sufficient loudness to cause numerous residents in the neighborhood to assemble in the road in front of the house," supported his arrest for disorderly conduct based on unreasonable noise. *Id.* at 514.

The distinctions between *Borden* (which the defendants do not address or even cite) and the plaintiff's version of events are too great for the Court to conclude that the conduct described in the preceding paragraph provided Thomas probable cause to arrest the plaintiff under subsection (2). First, the defendant in *Borden* did not shout a single statement but "hollered" repeated comments over an undetermined but apparently extended period of time. 523 So. 2d at 510. Second, the defendant in *Borden* did not simply yell to an officer to "bring your ass over here" but repeatedly yelled to the officer that he was a "mother-fucker." *Id.* Third, there is no indication in *Borden* that the officer was also yelling, while here the primary noisemaker was, under the plaintiff's evidence, Thomas himself. Fourth, in *Borden* a crowd of fifteen people was attracted to the scene by the defendant's yelling, *id.*, while in this case the number of patrons observing the scene is unstated and so must be assumed to be smaller. Fifth, thanks to Thomas' own repeated yelling, there is a reasonable inference that the patrons were attracted by Thomas' noise, not by the plaintiff's later, shorter and possibly quieter noise.[4] The defendants, clinging vainly to Thomas' controverted version of the facts, (Doc. 35 at 11-12), do not come to grips with the implications of the plaintiff's version, and that failure is fatal.

Nevertheless, the Court concludes that Thomas had arguable probable cause to arrest the plaintiff under subsection (2). The vagueness of the term "unreasonable," the unclear relation between Thomas' volume and the plaintiff's, and the uncertainty as to what prompted the patrons to gather, combined with the uncontroverted volume of the plaintiff's final, shouted exhortation, suffice to demonstrate that reasonable officers in the same circumstances "could have believed" that probable cause existed to arrest the plaintiff for making unreasonable noise.

---

[4]Thomas admits the spectators also could have been attracted by his unexplained use of the vehicle's flashing blue lights during the encounter. (Doc. 45, Exhibit 10 at R-58; Thomas Deposition at 65-66).

Because Thomas had arguable probable cause to arrest the plaintiff for disorderly conduct, he is entitled to qualified immunity.  Qualified immunity "is only a defense to personal liability for monetary awards resulting from government officials performing discretionary functions [and] may not be effectively asserted as a defense to a claim for declaratory or injunctive relief."  *Ratliff v. DeKalb County*, 62 F.3d 338, 340 n.4 (11th Cir. 1995).  The complaint, however, does not seek declaratory or injunctive relief.  Thus, Thomas' qualified immunity completely resolves the plaintiff's Fourth Amendment claim against Thomas for false arrest.

In their reply brief, the defendants for the first time argue that, because the circuit judge trying the plaintiff's case on appeal denied his motion for acquittal, (Doc. 36, Exhibit 7), the plaintiff is barred from now challenging the existence of actual probable cause, apparently on the basis of collateral estoppel.  (Doc. 51 at 4).  District courts, including this one, ordinarily do not consider arguments raised for the first time on reply,[5] and the defendants offer no reason the Court should stray from the rule here.  At any rate, decisions concerning application of collateral estoppel, in general and in the circumstances of this case, require exacting analysis, and the defendants' one-sentence argument is not remotely adequate to the task.

### B.  False Imprisonment.

The defendants do not question whether Count Two presents a constitutional claim.[6]  Certainly the law recognizes such a claim.   "Where a police officer lacks probable cause to make an arrest, the arrestee has a claim under section 1983 for false

---

[5]*See Park City Water Authority v. North Fork Apartments, L .P.* 2009 WL 4898354 at *1 n.2 (S.D. Ala. 2009) (citing cases from over 40 districts applying the rule in 2009 alone).

[6]On the contrary, they acknowledge that the plaintiff's false imprisonment claim is "functionally indistinct from his false arrest claim."  (Doc. 35 at 18 n.2 (internal quotes omitted)).

imprisonment based on a detention pursuant to that arrest." *Ortega v. Christian*, 85 F.3d 1521, 1526 (11th Cir. 1996). Such a claim "is based on the protection of the Fourteenth Amendment against deprivations of liberty without due process of law," *id.*, and the complaint invokes the Fourteenth Amendment. (Doc. 1 at 1). Accordingly, the Court assumes for present purposes that the Count Two incorporates a constitutional claim.

The only detention asserted by the plaintiff is transportation to the city jail and two or three hours in the jail, all immediately following his arrest. (Plaintiff's Deposition at 53).[7] His detention was thus incident to his arrest, and the power to arrest necessarily carries with it the power to detain. By Alabama statute, peace officer immunity extends only to those empowered by state law "to arrest and to take into custody" those who violate, or who are charged with violating, state criminal laws. Ala. Code § 6-5-338. Thus, anyone partaking of such immunity must have the authority to detain arrestees. Because municipal police officers are covered by Section 6-5-338,[8] they necessarily have discretionary authority to detain arrestees. Both courts and plaintiffs have commonly concluded that an officer's detention of an arrestee falls within his discretionary authority.[9] Thomas has met his initial burden.

A constitutional claim for false imprisonment based on a detention pursuant to an arrest "depends on an absence of probable cause ... to make th[e] arrest." *Case*, 555 F.3d at 1330 (internal quotes omitted). Qualified immunity to such a claim thus arises if there

---

[7] Although the plaintiff was found guilty in district court and sentenced to 30 days, he immediately appealed his conviction and on appeal was acquitted. (Doc. 45, Exhibits 1-2). There is no indication that he served any time on the conviction.

[8] *E.g., Blackwood v. City of Hanceville*, 936 So. 2d 495 (Ala. 2006); *Ex parte City of Tuskegee*, 932 So. 2d 895 (Ala. 2005).

[9] *E.g., Vinyard*, 311 F.3d at 1346; *Daniels v. City of Hartford*, 645 F. Supp. 2d 1036, 1057 (M.D. Ala. 2009); *Blunt v. Tomlinson*, 2009 WL 921093 at *5 (S.D. Ala. 2009); Rosa v. City of Fort Myers, 2007 WL 3012650 at *8 (M.D. Fla. 2007); *Phillips v. Irvin*, 2006 WL 1663677 at *9 (S.D. Ala. 2006), *rev'd in part on other grounds*, 222 Fed. Appx. 928 (11th Cir. 2007).

was arguable probable cause to arrest. As discussed in Part I.A, there was, and Thomas is thus cloaked with qualified immunity.

## C. Malicious Prosecution.

In a mere half-sentence, the defendants cryptically "dispute that the Plaintiff has properly asserted a malicious prosecution claim under § 1983," (Doc. 35 at 15), but they offer no explanation for their position. "[A] passing reference to an issue in a brief [is] insufficient to properly raise that issue" and effectively waives it. *Transamerica Leasing, Inc. v. Institute of London Underwriters*, 430 F.3d 1326, 1331 n.4 (11th Cir. 2005). Certainly the law recognizes a constitutional claim based on malicious prosecution. *E.g., Kingsland v. City of Miami*, 382 F.3d 1220, 1234 (11th Cir. 2004).

As the defendants note, the initial burden is on them to establish that Thomas acted within his discretionary authority. (Doc. 35 at 7-8). "If, and only if, the defendant does that will the burden shift to the plaintiff to establish that the defendant violated clearly established law." *Harbert International, Inc. v. James*, 157 F.3d 1271, 1281 (11th Cir. 1998). The reason is that an official acting outside the scope of his discretionary authority "ceases to act as a government official and instead acts on his own behalf," so that "the policies underlying the doctrine of qualified immunity no longer support its application." *Id*.

The defendants, however, fail to address in any manner the existence vel non of Thomas' discretionary authority to file a criminal complaint against the plaintiff.[10] "A bald assertion that the acts were taken pursuant to the performance of duties and within the scope of duties will not suffice" to meet a defendant's burden, *Harbert*, 157 F.3d at

---

[10]The defendants' treatment of the discretionary authority issue is explicitly limited to Thomas' conduct "in arresting" the plaintiff. (Doc. 35 at 8; Doc. 51 at 3). This language is sufficient to capture the plaintiff's claim for false imprisonment (since it is incident to the arrest) but insufficient to reach Thomas' separate conduct in initiating a criminal prosecution of the plaintiff several days later.

1282, but the defendants offer not even that. Nor do they provide argument or legal support for the proposition that Thomas had discretionary authority to initiate a criminal prosecution, and the Court will not endeavor to supply the deficiency. The defendants' failure on this threshold issue requires denial of qualified immunity as to this claim.

Even had the defendants met their initial burden, Thomas would not be entitled to summary judgment. Their only argument concerning the plaintiff's ability to establish the elements of his constitutional claim is that Thomas possessed actual or arguable probable cause to arrest him. (Doc. 35 at 16). The problem is that the probable cause relevant to a constitutional claim of malicious prosecution is not probable cause to arrest but probable cause to institute or continue the criminal prosecution. *Wood v. Kesler*, 323 F.3d 872, 881-82 (11th Cir. 2003). As noted in Part I.A, Thomas filed a criminal complaint against the plaintiff exclusively pursuant to subsection (6). As also noted in Part I.A, under the plaintiff's version of the facts Thomas lacked actual or even arguable probable cause to institute criminal proceedings under that subsection.

### D. Assault and Battery.

The defendants argue that Count Four articulates only a state law claim, not a constitutional one. (Doc. 35 at 12). Count Four is described as a claim for "assault and battery," not as one for "excessive force," and litigants routinely utilize the former language to denote a state claim, not a federal one.[11] Moreover, Count Four alleges only that Thomas violated the plaintiff's "right not to be touched in a rude and angry manner." (Doc. 1 at 6). This is the language of a state law claim,[12] not a federal one. Count Four

---

[11] *E.g., Denson v. United States*, 574 F.3d 1318, 1329 (11th Cir. 2009); *Vaughan v. Cox*, 343 F.3d 1323, 1327 (11th Cir. 2003); *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1242 (11th Cir. 2003).

[12] *E.g., Kmart Corp. v. Perdue*, 708 So. 2d 106, 110 (Ala. 1997) (an assault is an intentional, unlawful offer "to touch the person of another in a rude or angry manner," sufficient to raise a reasonable fear of imminent battery, coupled with the apparent

nowhere alleges that Thomas employed excessive force in effecting the arrest. The plaintiff does not contest the defendants' characterization of this claim. For all these reasons, the Court concludes that Count Four asserts no constitutional claim.

Even could Count Four be construed to include a constitutional claim for use of excessive force, it would fail. To the extent the plaintiff insists his arrest was not supported by probable cause, "a claim that any force in an illegal stop or arrest is excessive is subsumed in the illegal stop or arrest claim and is not a discrete excessive force claim." *Bashir v. Rockdale County*, 445 F.3d 1323, 1331 (11th Cir. 2006) (internal quotes omitted).

A viable discrete claim of excessive force assumes the defendant had legal authority to effect the arrest, and the question is whether he employed a constitutionally impermissible level of force in doing so. *Bashir*, 445 F.3d at 1332. "[T]his Circuit has established the principle that the application of de minimis force, without more, will not support a claim for excessive force in violation of the Fourth Amendment." *Nolin v. Isbell*, 207 F.3d 1253, 1257 (11th Cir. 2000). The defendants argue that this principle applies here. (Doc. 35 at 15).

In *Nolin*, the defendant officer grabbed the plaintiff from behind by the shoulder and wrist; shoved him against a van several feet away; pushed him in the back with his knee; pushed his head into the side of the van; and searched his groin area in an uncomfortable manner, resulting in "minor bruising which quickly disappeared without treatment." The Eleventh Circuit held that, as a matter of law, this force was de minimis and could not support a claim under the Fourth Amendment. *Id.* at 1255, 1258 & n.4. "In fact, the facts sound little different from the minimal amount of force and injury involved in a typical arrest." *Id*.

One of the three cases which *Nolin* cited as having established the de minimis force principle, 207 F.3d at 1256, was *Gold v. City of Miami*, 121 F.3d 1442 (11th Cir.

present ability to complete the attempt if not prevented).

1997).  In *Gold*, the plaintiff was arrested for disorderly conduct and placed in handcuffs. His only complaint was that the handcuffs were too tight, that they caused him pain, that the officers left them in that condition for approximately 20 minutes after he complained, and that they caused skin abrasions for which he did not seek treatment.  *Id*. at 1444, 1446-47.

*Nolin* and *Gold* are dispositive of the plaintiff's excessive force claim, if any.  As with the plaintiff in *Gold*, he objects only that the handcuffs were too tight.  The plaintiff in *Gold* experienced pain, while the plaintiff here was merely "uncomfortable."  The plaintiff in *Gold* experienced this condition for 20 minutes, the plaintiff here for less than ten.  The plaintiff in *Gold* suffered abrasions, the plaintiff here only bruises; neither sought medical treatment.

In sum, if Thomas lacked probable cause to arrest, a separate constitutional claim for use of excessive force is non-existent.  If Thomas had probable cause, as a matter of law under the uncontroverted facts he did not employ excessive force in effecting the arrest.  Either way, no excessive force claim can proceed.


## E.  Municipal Liability.

The defendants share the Court's uncertainty as to which of Counts Two through Five are directed against the City.  Like the defendants, (Doc. 35 at 16-17), the Court assumes for present purposes that all four of them are so directed.

With respect to Count Four, the City's entitlement to summary judgment is straightforward.  As discussed in Part I.D, to the extent Count Four purports to state a constitutional claim for use of excessive force, under the uncontroverted facts there was as a matter of law no constitutional violation.  That ruling shields the City as thoroughly as it does Thomas.

With respect to Counts Two, Three and Five, it remains open to the plaintiff to establish constitutional violations by Thomas, even though he is immune from liability as

to the false arrest and false imprisonment claims.  The question becomes whether, on the record before the Court, the City could be liable for any such violations.

"[T]o impose section 1983 liability on a municipality, a plaintiff must show:  (1) that his constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation."  *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004).

"The law is clear that a municipality cannot be held liable for the actions of its employees under § 1983 based on a theory of respondeat superior. [citation omitted] Rather, only deprivations undertaken pursuant to governmental 'custom' or 'policy' may lead to the imposition of governmental liability."  *Griffin v. City of Opa-Lacka*, 261 F.3d 1295, 1307 (11th Cir. 2001).  "Policy" means an "officially promulgated ... policy" of the entity.  *Grech v. Clayton County*, 335 F.3d 1326, 1329 (11th Cir. 2003).  "Custom" means a "widespread practice that ... is so permanent and well settled as to constitute a custom or usage with the force of law."  *Holmes v. Kucynda,* 321 F.3d 1069, 1078 (11th Cir. 2003) (internal quotes omitted); *accord Cooper v. Dillon*, 403 F.3d 1208, 1221 (11th Cir. 2005). When challenged on motion for summary judgment, the plaintiff bears the burden of coming forward with evidence of such a policy or custom.  *Eubanks v. Brook*, 197 Fed. Appx. 819, 821 (11th Cir. 2006).  The defendants have pointed out the plaintiff's lack of any such evidence.  (Doc. 35 at 17-19).

With respect to the false arrest and false imprisonment claims, the plaintiff asserts that "Thomas was ... inadequately trained because [he] was unaware that arresting a person for using the word 'damn' to a police officer failed to provide probable cause." (Doc. 42 at 8).  While "the inadequacy of police training may serve as the basis for § 1983 liability," *City of Canton v. Harris*, 489 U.S. 378, 388 (1989), "[i]n resolving the issue of a city's liability, the focus must be on the adequacy of the training *program* ...." *Id*. at 390 (emphasis added).  A "program" as used in *City of Canton* is "necessarily

intended to apply over time to multiple employees." *Bryan County Commissioners v. Brown*, 520 U.S. 397, 407 (1997). Thus, "that a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training program." *City of Canton*, 489 U.S. at 390-91. Because the plaintiff provides no evidence (or even allegation) that Thomas' ignorance of the law resulted from a faulty training program of the City, as a matter of law he cannot establish inadequate training as a basis for municipal liability.

The only policy the plaintiff identifies "does not allow a superior officer to stop the arresting officer from going forward with a case in which probable cause is lacking." (Doc. 42 at 8). Any such policy addresses only Count Five, for malicious prosecution. The defendants's sole response is that "[n]o evidence of any such policy has been introduced," (Doc. 51 at 5), but this is plainly incorrect; the affidavit to which the plaintiff cites contains precisely the language quoted above. (Griffis Affidavit at 3). Since the defendants' single challenge to the plaintiff's position fails, the City is not entitled to summary judgment with respect to the federal aspect of the malicious prosecution claim.

## II. State Claims.

### A. False Arrest.

The defendants rely primarily on Thomas' asserted immunity. Alabama provides immunity to municipal police officers performing discretionary functions:

> Every peace officer ... who is employed or appointed pursuant to the Constitution or statutes of this state, whether appointed or employed as such peace officer by the state or a county or municipality thereof, ... and whose duties include the enforcement of ... the criminal laws of this state, and who is empowered by the laws of this state ... to arrest and to take into custody persons who violate, or who are lawfully charged by warrant, indictment, or other lawful process, with violations of, the criminal laws of this state, shall at all times be deemed to be officers of this state, and as such shall have immunity from tort liability arising out of his or her conduct in performance of any discretionary function within the line and scope of his or her law enforcement duties.

Ala. Code § 6-5-338(a).[13]  Although the subject of a separate statute, "whether a qualified police officer is due § 6-5-338(a) immunity is now judged by the restatement of State-agent immunity articulated by *Ex parte Cranman*, 792 So. 2d 392 (Ala. 2000)." *Blackwood v. City of Hanceville*, 936 So. 2d 495, 504 (Ala. 2006) (internal quotes omitted).

Under *Cranman*, "[a] State agent *shall* be immune from civil liability in his or her personal capacity when the conduct made the basis of the claim against the agent is based upon the agent's ... exercising judgment in the enforcement of the criminal laws of the State, including, but not limited to, law-enforcement officers' arresting or attempting to arrest persons ...." 792 So. 2d at 405 (emphasis in original).[14]  In order to constitute a "discretionary function" for purposes of Section 6-5-338(a), the defendant must have had at least arguable probable cause to arrest.  *Borders v. City of Huntsville*, 875 So. 2d 1168, 1179-80, 1181 (Ala. 2003).  Both probable cause and arguable probable cause are defined in Alabama consistently with the federal definitions quoted in Part I.A.  *E.g., id.*; *City of Birmingham v. Major*, 9 So. 3d 470, 478 (Ala. 2008). As discussed in Part I.A, Thomas had arguable probable cause to arrest the plaintiff for disorderly conduct based on unreasonable noise.

However, "[n]otwithstanding anything to the contrary in the foregoing statement, a State agent *shall not* be immune from civil liability in his or her personal capacity ... when the State agent acts willfully, maliciously, fraudulently, in bad faith, beyond his or her authority, or under a mistaken interpretation of the law." *Cranman*, 792 So. 2d at 405 (emphasis in original).  For purposes of the immunity issue, "willful," "malicious" and

---

[13]This immunity protects not only officers but also "governmental units or agencies authorized to appoint peace officers." *Id*. § 6-5-338(b).  *E.g., Ex parte City of Gadsden*, 781 So. 2d 936, 940 (Ala. 2000) ("The plain language of [Section 6-5-338(b)] extends that discretionary-function immunity to the City.").

[14]*Cranman* was a plurality opinion.  It was adopted by the majority in *Ex parte Butts*, 775 So. 2d 173, 177-78 (Ala. 2000).

"bad faith" all require evidence that the defendant acted with the intent to injure or with ill will towards the plaintiff. *Ex parte Nall*, 879 So. 2d 541, 546 (Ala. 2003); *Williams v. City of Montgomery*, 48 F. Supp. 2d 1317, 1328 (M.D. Ala. 1999). In the arrest context, a plaintiff may satisfy his burden "by, for example, showing that the defendant had a personal ill will against the [plaintiff] and that he maliciously or in bad faith arrested him solely for purposes of harassment." *Ex parte Tuscaloosa County*, 796 So. 2d 1100, 1107 (Ala. 2000) (internal quotes omitted). The defendants assert generally that the plaintiff "is unable to produce substantial evidence to make any such inference." (Doc. 35 at 23). The Court is not so sure.

First, there is evidence that Thomas had on two separate occasions been called down for mistreating the plaintiff. In one incident, Thomas stopped the plaintiff for driving without a tag and cursed him. Thomas let the plaintiff go when he produced paperwork showing he had just picked up the vehicle from a repair shop. The plaintiff got a tag on the truck, but the next day Thomas pulled him over and asked where he stole the sticker. Thomas was sufficiently agitated that a sergeant who drove up told Thomas to calm down. On another occasion, there was a shooting a block or so from the plaintiff's house. Thomas came in the plaintiff's yard, repeatedly screaming at the plaintiff, "Where's the gun?" Another officer saw what was happening and instructed Thomas to leave the plaintiff's yard. (Plaintiff Deposition at 55-57).

Second, there is evidence that Thomas objected to the color of the plaintiff's skin. As noted, when Thomas encountered the plaintiff, he was walking in his neighborhood, which is predominantly African-American, in the company of three white males. According to Fuschen, when Thomas ordered him to approach the patrol car, he asked Fuschen what the hell he was doing in this part of town, which Fuschen understood as a reference to its racial composition. Thomas then asked Fuschen what he was doing "with him," indicating the plaintiff. Fuschen responded that the plaintiff was family, and Thomas asked what he meant by family. Fuschen responded, "There's only one way that

word is meant," and at that point a furious Thomas suddenly jumped out of the car and screamed at the plaintiff to "bring [his] ass here." The content of this conversation as reported by Fuschen, the timing of Thomas' decision to arrest the plaintiff, and his palpable anger at the plaintiff supports an inference that Thomas became enraged at this mixing of the races and acted on that impulse in arresting the plaintiff.

Third, and as noted above, Thomas has been all over the map as to why he arrested the plaintiff. While this standing alone might not suggest malice, willfulness or bad faith, it does underscore the evidence of personal and racial animosity discussed above which, taken as a whole, supports a reasonable inference that Thomas maliciously, willfully and in bad faith arrested the plaintiff solely for purposes of harassment.

The defendants do not address this evidence. Instead, they assert without amplification that "[p]robable cause negates claims for false imprisonment." (Doc. 35 at 26). The case on which they rely for this proposition, however, indicates that probable cause is merely one of a number of factors to consider in determining whether an exception to immunity exists. *See Ex parte City of Montgomery*, 758 So. 2d 565, 570 (Ala. 1999) (stating that, in determining whether the arresting officer acted willfully, maliciously or in bad faith, "[f]irst, we look to whether [he] had probable cause to arrest," and considering other matters even after finding probable cause); *see also City of Birmingham v. Sutherland*, 834 So. 2d 755, 762 (Ala. 2002) (immunity prevailed where the officer had probable cause and the plaintiff "further failed to specifically allege, or to present any evidence tending to prove, that [the defendant's] actions were taken in bad faith, or that his conduct was willful or malicious").[15] At any rate, and as discussed in Part I.A, the evidence taken in the light most favorable to the plaintiff does not confirm the existence of probable cause but only of arguable probable cause.

Because the defendants have failed to show the absence of a genuine issue of

_____

[15]The defendants also cite a case involving arrest by a merchant, but they have not shown the relevance of such authority to a case involving arrest by a police officer.

material fact as to whether Thomas falsely arrested the plaintiff willfully, maliciously or in bad faith, they are not entitled to judgment as a matter of law.

The City invokes Alabama Code § 11-47-190, which reads in pertinent part as follows:

> No city or town shall be liable for damages for injury done to or wrong suffered by any person or corporation, unless said injury or wrong was done or suffered through the neglect, carelessness or unskillfulness of some agent, officer or employee of the municipality, engaged in work therefor and while acting in the line of his duty ....

Ala. Code § 11-47-190. Under this provision, "a municipality cannot be held liable for the intentional torts of its agents." *Ex parte City of Tuskegee*, 932 So. 2d 895, 910-11 (Ala. 2005). However, a claim of false arrest based on the neglect, carelessness or unskillfulness of the arresting officer can proceed against a municipality. *E.g., Borders*, 875 So. 2d at 1183-84. The complaint alleges that the City "is responsible under state law for the negligence of its police force," (Doc. 1, ¶ 2), and the City has not explained how either the complaint or the evidence precludes the plaintiff from establishing that Thomas falsely arrested the plaintiff based on neglect, carelessness or unskillfulness. Accordingly, the City has not shown itself to be entitled to summary judgment under Section 11-47-190.[16]

### B. False Imprisonment.

The defendants make the same arguments concerning Thomas' immunity as they do with respect to false arrest, and to like effect. The City, however, has more success with its invocation of Section 11-47-190, because the complaint explicitly limits Thomas'

---

[16]Given the existence of arguable probable cause, it is not clear how the City could be liable under this claim. If Thomas acted willfully, maliciously or in bad faith, the City is presumably protected by Section 11-47-190. If Thomas acted negligently, carelessly or unskillfully, the City is presumably protected by Section 6-5-338. However, as the City has raised no such argument, the Court does not consider it.

mental state to that of "intentionally, wantonly, recklessly, and/or maliciously" falsely imprisoning him. (Doc. 1, ¶ 12). That allegation precludes the plaintiff from asserting that Thomas falsely imprisoned him due to his neglect, carelessness or unskillfulness.[17] The City is thus entitled to summary judgment on this claim.

## C. Malicious Prosecution.

An essential element of a malicious prosecution claim is that "a prior judicial proceeding was instigated by the present defendant without probable cause." *Borders*, 875 So. 2d at 1182. The defendants argue there was probable cause for prosecuting the plaintiff for disorderly conduct. (Doc. 35 at 29-30). The plaintiff, however, was prosecuted for disorderly conduct based on congregating with other persons and refusing a lawful order to disperse. As discussed in Part I.A, under the version of the facts most favorable to the plaintiff there was not probable cause to believe the plaintiff had congregated and refused a lawful order to disperse.

The defendants note that a conviction is prima facie evidence of probable cause, even if the decision is later vacated. (Doc. 35 at 29-30). True enough,[18] but this evidence "may be rebutted by any competent evidence which clearly overcomes the presumption arising from the fact of the defendant's conviction in the first instance." *Brown v. Parnell*, 386 So. 2d 1137, 1139 (Ala. 1980). The defendants have not addressed how the evidence discussed herein fails as a matter of law to overcome the presumption on which they rely.

---

[17]*Ex parte City of Tuskegee*, 932 So. 2d at 910 (malice); *Cremeens v. City of Montgomery*, 779 So. 2d 1190, 1201 (Ala. 2000) (intent); *Town of Loxley v. Coleman*, 720 So. 2d 907, 909 (Ala. 1998) (wantonness); *Altmayer v. City of Daphne*, 613 So. 2d 366, 369 (Ala. 1993) (recklessness).

[18]*E.g., Gunter v. Pemco Aeroplex, Inc*., 646 So. 2d 1332, 1333-34 (Ala. 1994) (defendant convicted of disorderly conduct in municipal court, charge nol-prossed after appeal to circuit court).

In their reply brief, the defendants for the first time argue that the plaintiff cannot establish the element of malice.  (Doc. 51 at 4).  As noted in Part I.A, courts generally do not consider arguments raised for the first time on reply.  At any rate, "[i]t is well established that for purposes of a malicious-prosecution claim, the element of malice may be inferred from the lack of probable cause ...."  *Ex parte Tuscaloosa County*, 796 So. 2d at 1107.

Malice sufficient to satisfy that element of a cause of action for malicious prosecution is not enough to strip a peace officer of immunity.  *Ex parte Tuscaloosa County*, 796 So. 2d at 1107.  The defendants, however, do not expressly assert Thomas' immunity with respect to this claim, (Doc. 35 at 29-30), and their preceding discussion of immunity principles appears to exclude the claim of malicious prosecution.  (*Id.* at 24 (confining the discussion to "whether or not the Officer Thomas [sic] should have arrested the Plaintiff").  At any rate, the evidence discussed in Parts I.A and II.A reflects the existence of a genuine issue of material fact as to whether Thomas pressed charges against the plaintiff maliciously, willfully or in bad faith.[19]

The City correctly notes that Section 11-47-190 precludes a claim against it for malicious prosecution.  *Neighbors v. City of Birmingham*, 384 So. 2d 113, 114 (Ala. 1980); *accord Franklin v. City of Huntsville*, 670 So. 2d 848, 850 (Ala. 1995).

### D.  Assault and Battery.

The defendants again argue that Thomas is immune and that the City shares his immunity.  (Doc. 35 at 28).  The defendants have not addressed the evidence of malice, willfulness and bad faith discussed in Part II.A and therefore have not shown the absence

---

[19]In addition, the plaintiff has presented evidence that the City's assistant police chief, being fully apprised of the circumstances, advised Thomas there was no probable cause for an arrest and informed him the best practice would be to withdraw and file the criminal complaint (which would delay the prosecution and lead to its eventual dismissal), but Thomas refused.  (Griffis Affidavit).

of a genuine issue of material fact as to immunity.

The City posits that it is not a defendant under this count. (Doc. 35 at 28). However, Count Four incorporates by reference the allegation that the City is liable for Thomas' negligence, and the ad damnum clause seeks recovery from the City as well as from Thomas. (Doc. 1 at 6-7). The Court concludes that the City is a defendant under this count.

Finally, the City asserts immunity under Section 11-47-190. (Doc. 35 at 29). However, as with false arrest, a claim of assault and battery by an arresting officer can be based on his neglect, carelessness or unskillfulness. *Borders*, 875 So. 2d at 1183-84.

**E. Negligent Training and Supervision.**

The plaintiff's claim of negligent training and supervision requires him to show that Thomas was incompetent and that the City knew of, or had notice of, his incompetency based on past conduct reflecting the incompetency. *Pritchett v. ICN Medical Alliance, Inc*., 938 So. 2d 933, 940 (Ala. 2006); *Mardis v. Robbins Tire & Rubber Co.*, 669 So. 2d 885, 889-90 (Ala. 1995). As the defendants note, (Doc. 35 at 25-26), there is no evidence that Thomas had previously falsely arrested, falsely imprisoned, assaulted or maliciously prosecuted a citizen. Because there is no evidence of Thomas' incompetency or of notice thereof to the City, the plaintiff's claim must fail.

**CONCLUSION**

"There is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment." *Resolution Trust Corp. v. Dunmar Corp*., 43 F.3d 587, 599 (11th Cir. 1995). The analysis above, while the fruit of the Court's conscientous effort to address the limited presentation of the parties, should not be understood as a definitive catalog of the issues that could have been raised by either side or as a definitive treatment of those that were raised.

Based on the incomplete argument and authority presented by the parties, the defendants' motion for summary judgment is **granted** with respect to both defendants as to the constitutional claims for false arrest, false imprisonment, and assault and battery and **denied** with respect to both defendants as to the constitutional claim for malicious prosecution. The motion for summary judgment is **granted** with respect to the City as to the state claims for false imprisonment, malicious prosecution, and negligent training and supervision and **denied** with respect to the City as to the state claims for false arrest and assault and battery. The motion for summary judgment is **denied** with respect to Thomas as to all four state claims asserted against him.[20]

DONE and ORDERED this 22nd day of April, 2010.

s/ WILLIAM H. STEELE
CHIEF UNITED STATES DISTRICT JUDGE

---

[20]Remaining in the lawsuit are the following: constitutional claim for malicious prosecution against both defendants; state claim for false arrest against both defendants; state claim for false imprisonment against Thomas only; state claim for malicious prosecution against Thomas only; and state claim for assault and battery against both defendants.